We'll hear the next case, Abdelal v. Police Commissioner Kelly. May it please the Court, Deborah Greenberger for the appellant. The District Court's decision here should be reversed for two reasons. First, the wrongful termination claims were dismissed on a preclusion theory, but even the District Court recognized that the race and religion claims were never raised before the State Court. It nonetheless dismissed them because it applied the clearly erroneous race judicata standard. And also, if you look at the facts here, the State Court never reached the nationality discrimination claims. If we review the record and we conclude that no reasonable jury would find for your client on the merits, we would be free to do that, correct? You would obviously be free to do that, Your Honor. It would, you know, we would suggest that it be remanded to the District Court for consideration in the first instance. But it— Your client was found—there was a department trial in which all of this was explored. He admitted to seven, six or seven of these charges. And the one that's really serious was when he went to the prison for—to speak to a prisoner on a personal matter using his authority of the police and then lied to the authorities at the prison that he was acting on behalf of Interpol. And that was pretty, pretty serious and was a basis, it seems to me, for concluding that there was a legitimate nondiscriminatory reason for this termination based upon the police recommendation, not the Deputy Commissioner's recommendation, but the prior recommendation that went to Commissioner Kelly. The question, Your Honor, is not whether they had grounds to terminate him. The question is what was the motive, what was Commissioner Kelly's motive when he chose to terminate him, notwithstanding the fact that the hearing officer who hears many, many of these cases thought termination was not—was not appropriate. And I think the most powerful evidence in the summary judgment record, which, again, the District Court never reached, but the most powerful evidence is the comparator evidence because it shows how Commissioner Kelly chooses to exercise his discretion about whether to terminate or not terminate an officer found to have done misconduct. And the closest comparator that they found that was terminated was a police officer who had actually hired a hitman to try to kill his ex-wife. That's 1828 in the record. And in comparison, what we have is that another officer, for just as an example, this is in our reply brief, footnote 11, made 46 criminal visits despite his supervisor ordering him not to. He had—on multiple occasions he had domestic violence incidents, and he didn't inform the police of unusual occurrences. And for him, he wasn't terminated. He just lost 40 vacation days. And we have another comparator who forged a loan application, and he made repeated visits to Rikers, again, something he wasn't supposed to do. And in that case, the hearing officer suggested a 45-day penalty, and Kelly disagreed. He lowered the penalty. And that's, in general, what the comparator evidence shows, that Kelly was never the one increasing the penalty. He either stuck to the recommendation or actually repeatedly lowered it. And so a jury is entitled to look at this comparator evidence and try to determine what was Commissioners Kelly's motive in— And you also have what you contend is direct evidence of bias on the part of Commissioner Kelly against Muslim men. We do, Your Honor. We have his statements that he's made in the public record where he says that it's basically a good idea to spy on Muslims and is popular. We have his— And all of this is part of a something like 1,000-page or more summary judgment record, which the district court has never looked at. And if we were to try to address this issue, we would be deciding a complex summary judgment issue as a court of first instance, basically. That's correct, Your Honor. What is your basis for arguing that there's a hostile work environment here? I mean, an investigation was going on at the time, but this isn't the typical case of a hostile work environment, which is people baiting a person or putting messages on the that make it very uncomfortable for the person to work on a day-to-day basis. Isn't your hostile work environment simply the fact that there was an investigation going on? A few things, Your Honor. First of all, this is, again, a question that the district court never reached. Understood. But answering your question, I would agree that this is not a typical hostile work environment, but what we have here is a pervasive investigation that lasted over four years that went into all aspects of his life and his family's life. And especially under the New York City Human Rights Law, which has a three-year statute of limitations, which has a very broad vision of if there's anything discriminatory at all, if it's not petty or trivial, that's sufficient. This certainly, in my view, qualifies under- But of course, in this respect, you are not, or are you, able to rely on whatever evidence there is of Commissioner Kelly's possible bias? There's no indication in this record that Commissioner Kelly personally directed this investigation to take place, is that right? That's correct, Your Honor. So this would have to be evidence that this widespread investigation was itself undertaken for discriminatory reasons? That's correct. And I can tell you some of that evidence, which, again, the district court didn't reach. One of the most striking pieces of evidence is that the city chose to reach out to the Joint Terrorism Task Force about this case, even though Commissioner Kelly said the department policy is only to do so when there's a suspicion of terrorism. There was nothing about this case that should have raised a suspicion of terrorism. Yeah, but I hear that, but I'm just trying to figure out, there was a very detailed investigation, as there probably should have been. If it was somehow wrong, or even discriminatory, to call up the Joint Terrorism Task Force and ask them, do you have anything on Mr. Abdullah, well, the answer was no. And as far as I'm aware, was Mr. Abdullah ever even aware of this until later when litigation starts and so on? Well, he was aware. So in other words, how would reaching out and calling up the Joint Terrorism Task Force and saying, you have anything on Abdullah, or anything on Gaddou, for that matter, have any impact at all on Mr. Abdullah's professional working environment? A couple of things, Your Honor. First of all, under the New York City human rights law, it's not the question about whether it's affecting his workplace environment. It's whether he's being treated differently, and it's on account of his protected characteristics. So I'm talking about how he's being treated differently. He's going through this in-depth investigation. And part of our evidence that it was on account of that is the Joint Terrorism Task Force. The other part is we have a direct statement of the type that's very rare in this day and age, that the reason that the supervising investigator contacted the Joint Terrorism Task Force, what was in the back of her mind was his Middle Eastern status. That's the type of admission that a jury is entitled to give a lot of weight. You're out of time. Okay. You have some rebuttal. We'll hear from the other side. Thank you, Your Honors. May it please the court, Susan Greenberg for Appellees. Your Honors, the plaintiff was terminated based on a stunning record of misconduct. And after- Putting aside all the wrongdoing, it appears the district court got it wrong in applying re judicata instead of collateral estoppel. Certainly not. I don't think it's disputed that the court ultimately raised and applied this correct state law standard, which is raised, necessarily decided- The district court said that the plaintiff could have raised these claims, chose not to. And therefore, but the claims are precluded, and that's claim preclusion. And our case law says you don't apply claim preclusion in this situation. Well, certainly the court explicitly found that he had chosen to raise the national origin discrimination claim in the Article 78 proceedings. So the district court made that- My question first was, did the district court err in applying re judicata principles instead of collateral estoppel? No, the court passingly referred to res judicata. This is governed by state law, and all of the seminal state law decisions refer to collateral estoppel as a branch of res judicata. And if you look at the cases, they start by talking about res judicata and then talk about collateral estoppel. So perhaps that was part of- Do you agree that civil rights claims are not precluded by the prior Article 78 proceeding? Certainly, as a general rule. As a general matter, absolutely yes, and we moved based on collateral estoppel, that's what we're arguing. There could be some question about whether res judicata applies here, because he asserted he went beyond pure Article 78 and asserted compensatory damages claims and attorney's fees. Did the first department say anything about discrimination in its order? Not explicitly, but again, under multiple decisions of this court and of the state court, by saying- The question is, do we know that the first department actually decided the discrimination? Yes, under state- How do we know that? Under state law, so when a factual allegation of discrimination is levied in an Article 78 proceeding, it's levied generally, and it was here, to persuade the court. It's a fact that's levied to persuade the court that the penalty was disproportionate. Does that apply when it's raised in a footnote and when the city affirmatively argues in the Article 78 proceeding that he didn't effectively raise this and so you shouldn't pay any attention to it? A couple of- And then the court doesn't allude to it. A couple of responses to that, if I could, your honor. The city made the same argument there that it is here, which is that there is zero evidence of discrimination, and also that there was a legitimate reason for the actions taken. So the city didn't argue that it was improperly raised, the city argued that it was unsupported. Something can be raised and decided without being effectively litigated. The cases are very clear about that. But under the case law, the fact that the court said that the penalty was not shocking, and that there was substantial evidence, this court's decision in Machio, for example, and multiple other ones we cited in our brief, that that's effectively in saying that it was rash. Substantial evidence is the same as saying it wasn't arbitrary and capricious. It means it wasn't motivated by an improper purpose, and also that the penalty wasn't disproportionate. Did that apply, and the argument he made was that this was discrimination based on his Egyptian national origin. That was one of several things that he said in the petition and in the submissions. Certainly- That's the one that you allude to. The only, I don't know if it was you personally, of course. The city's response was finally, Abdullal's bold single sentence claim that he was terminated not because his misconduct warranted dismissal, but because of his Egyptian national origin. And that's a quote from Abdullal's brief, was terminated because of his Egyptian national origin, must be rejected because he made no attempt to develop this argument, cite the relevant standard or case law, or provide any evidence to substantiate this allegation. To the extent he refers to his federal case in a footnote, these conclusory statements are insufficient. I mean, this sounds to me like inviting the court to disregard the argument as being insufficiently made, first of all. But secondly, it's only about national origin, right? Not about race or religion. Disregard it because there's no evidence and no support, so it wasn't effectively litigated. But, and there can be no question, the penultimate sentence of their brief to the appellate division said that the penalty was disproportionate because it was racially motivated. The petition- Race and religion claims in the article 78 proceeding. I think what the district court was saying was that his position jumbled all of these things together, right? So he said in his petition that he was profiled and investigated and scrutinized on orders of Commissioner Kelly, that's in paragraph seven to eight of the petition. And he jumbled all these things together in his brief at the hearing. So his position was, they treated me as a terrorist because my name is Mohammed Abdelal and I'm from Egypt. And he didn't assert these as distinct forms of discrimination. I think that's what the district court was getting at. Certainly there can be no dispute that they explicitly made a pitch to the appellate division that the penalty was disproportionate because it was both racially motivated and motivated based on national origin. Moreover- You're running out of time almost, but in terms of the statute of limitations issue, the district court did not discuss the 1981 claims, correct? That's correct, your honor. And I- There's a different statute of limitations for 1981? That's absolutely right, but- The additional year would pick up some additional events? So two things about that. First of all, there's been no Monel violation alleged here. So a 1981 claim, as we pointed out, in the district court and in our brief, require showing that the municipal customer policy was the motivating force behind the activity. And there's been no showing of that. And by the way, they deposed Commissioner Kelly. And they asked him questions about his role or lack thereof in IAB investigations. And that was not included in the record because it was unhelpful to them. So- My question is simply whether the district court considered the longer four year statute of limitations. The district- Dismissing the hostile environment claims is untimely. The district court did not, however, both, there is no viable 1981 claim here on the merits because they have absolutely failed to allege or prove a Monel violation. The district court so hold? The district court did not reach that. But fundamentally, all of the harassment claims fail on statute of limitations and on merit for the same reason which your honors alluded to. Which is that monitoring an employee who has 11 substantiated disciplinary violations is not workplace harassment. Cautiously investigating why a police officer would pretend to be part of an Interpol investigation in an official capacity is not workplace harassment. As far as the joint terrorism task force- I guess I'm having just a little trouble understanding the position. I mean, you keep coming back to the merits of these things. And it would seem to me that our job here primarily is to decide whether the district court erred in the reasons that it gave for dismissing this and not to be undertaking to examine a 1,000 page plus record in the first instance. So I wish you would get back to the question of the statute of limitations because it seems to me not only did the district court not apply necessarily the correct statute of limitations. I mean, it's three years for 1983, it's three years for the city claims, right? But also, didn't correctly perceive what the hostile environment claim included because it purports to include things that post dated the investigation itself. Now again, that may be wrong too, but as a matter of statute of limitations, didn't the district court just get this wrong? What I'm suggesting, your honor, is that Abdullah Holy failed to point to anything that could be construed as a continuing violation or an additional harassing act after the limitations period. So the fact- The district court seemed to focus on the investigation that ended September 30, 2009. It doesn't refer to anything else, but there is evidence in the record of later, later events, later facts, which may or may not be discriminatory, but the district court doesn't address them. Because there's no way that they could be construed as harassing acts, so as to implicate. Subsequent investigation or inquiry effectively a continuation because it was the same person was doing it. It was just that the first, there's a time limitation on the original investigation, so it had to be terminated, isn't that? There's actually a negative or inverse relationship between the IAB investigation and the placement on disciplinary monitoring. The IAB investigation was to determine whether these other things had occurred, the criminal association, etc. They determined that it had not, and then they brought him up on disciplinary charges for all the other things, right? All the other stuff that happened, and then he was placed on monitoring, and the integrity tests were about whether he properly documented encounters. This is a person who had multiple issues about documentation. He was disciplined and his partner was not in the one case in which they both jointly did the same thing. I would like to address that, I'm glad your honor raised that, because that relates to some mischaracterizations of the record that were first levied in the reply brief on appeal. His partner had a parking ticket, and he had unsubstantiated CCRB allegations and chronic sick leave. Abdullah also had unsubstantiated CCRB allegations, he also had chronic sick leave. Neither of those things were a basis for either of them to be disciplined or investigated. Once again, that's a factual argument, and you're asking us to look at the record and- I'm suggesting, your honor, that there's no greater indication of the weakness of the claim than the fact that it's been such a moving target across this appeal. And that we end in the reply with mischaracterizations of the record and citation to a New Yorker article that was published while the appeal was pending with quotes from the plaintiff's counsel. There's no evidence. Before you sit a minute, may I ask one question about the motion, the unsealing motion? Isn't it clear that the summary judgment record and the briefs in this case are judicial records to which there is a presumptive First Amendment right of public access? A presumptive right. Presumptively here, no, because there is a protective order in place. And so there- But the question is whether that is legitimate. So you have a protective order during the discovery. I understand that. But then, it's not just about the discovery and the documents that privately go back and forth between each party as to which there's confidentiality. Now we have a district court, and then we, being asked to evaluate what would seem to a member of the public to be serious allegations, whether they are or not depends on the record. And that's adjudicated by the courts based on records that are now sealed. And I'm having trouble understanding why that is justified. Now I understand certain redactions, names of comparators, maybe even identifying specific information about comparators and so on. But why, what is the basis for saying that the public is not entitled to know about the facts of how the police disciplinary system works? So a couple of things if I could in response to that, your honor. Certainly there's a weighing that has to happen. There's also a law enforcement- And has that ever happened? That has never happened in this case? It didn't happen because the parties consented to this, but- Now they don't consent anymore. And now I'm not consenting. We can sui sponte address this question, can we not, as to what happens in this court and whether it should be sealed or not? Certainly, your honor, but- So what I want to understand is what process do you propose should be in place for us to decide or to send back to the district court to decide which of these redactions are actually necessary because of some compelling rationale and which are not. Because it seems to me that that is the standard that is appropriate to apply to documents that have formed the basis, perhaps for the district court's decision, will form the basis for our decision. Certainly, as we've said in our papers, we believe that if this was raised at all, it should be in the district court so it can be determined on a more granular level. There's also, of course, law enforcement and other public interest privileges that come into play when you're looking at the entirety of an IAB investigation. And if I could just make one- This may be so as to the appendix and the summary judgment record. I understand that, that there's going to be a lot of material there and it may be appropriate for the district court to look at that in the first instance. But the briefs that are filed in this court are my principal concern. And there's a lot of blacked out stuff in there that I'm not sure I understand why it's blacked out. I believe we both sides blacked out the material that's cited to the sealed appendix in the case. Yeah, but that's circular. It may be that, again, there's a lot of stuff in the sealed appendix. And I don't think that this court is in a position to undertake a review, again, of 1,000 pages of stuff and figure out line by line what should come out. But it's a much more manageable task to look at the specific items that are in the briefs. And decide whether they are appropriately sealed or not. And not just by reference to saying, well, it was sealed in the appendix, so it has to be sealed in the briefs. But by the same token, because the parties consented to this, we didn't have the opportunity- I'm not complaining about what you did. I'm asking you what you think we should do now. Why shouldn't the parties go back and undertake a good faith effort to understand what really needs, based on a compelling interest, to be sealed about the briefs or redacted from the briefs. And if they can't agree, make some kind of submission to this court about what does and should not remain unsealed, at least about the briefs filed in this court. What I'm suggesting, Your Honor, is that that analysis can't be undertaken in isolation from a larger analysis about the record as a whole and the IAB file as a whole. So the city needs to have the opportunity to address that in context. Address it any way you want, in context, out of context, by reference to anything you think is appropriate. But I'm asking you, is there any reason why we should not order you and your adversary to sit down and negotiate in good faith about what needs to be redacted and what does not need to be redacted in the briefs. And then submit, under seal if you wish, briefing to this court about what you disagree about and why. I think your answer is you have no objection to engaging in such a process with counsel for the other side. All we're saying is, all Judge Lynch is suggesting, is that you talk about what can be unredacted in the briefs. My suggestion is that that needs to happen in the district court on a granular level where we can address the record as a whole. What if we decide you can't do that and just say, we're going to unredact unless you give us good reasons to keep the redactions in? To us. Without regard to what happens at the district court. Because an important part of the privilege from our perspective has to do with the law enforcement and public safety privileges that have to do with- Right, and you can then point that out. You're just having a discussion with the other side about whether it's possible. In the end, your position might be it's not possible and it should go back to the district court. But in the first instance, it seems to me it's not a big deal to talk to the other side about whether any of the briefs filed in this court can be unredacted or any portions thereof. Your Honor, I have not, certainly have not been authorized by my client to agree to anything being unredacted. We're not asking you to do that. We're not asking. Okay, we heard enough. We'll hear from the rebuttal. Thank you. Thank you, Your Honor. Thank you, Your Honor. First, I was surprised to hear my adversary not be willing to concede that the district court applied the wrong standard. It clearly applied the wrong standard. It said plaintiff could have properly raised all of these claims referring to the discrimination, the disparate treatment based on race and religion claims before the Article 78 court, but chose not to. So there really, I don't think there can be any real dispute. And turning to the national origin claims, my adversary cites the penultimate sentence of our brief and the reason that in the Article 78. The reason she does so is because it's a 39 page brief. It's in the record and that's the only place in the brief. There's really just two lines where there's any mention of national origin discrimination. So it's not surprising that the city's position before the Article 78 court is- What would you like us to do in this case? I think, Your Honor, should reverse on both of the procedural grounds and should remand for further proceedings consistently. And then the district court could take up the summary judgment on the merits. It could, Your Honor. And I did also just want to address very quickly the redaction issue. I think it's actually appropriate for this court and not the district court to decide whether its own briefs are sealed. I don't think that's appropriate in the district court. And we're talking about 135 lines. This is something that the city should be able to look at and have somebody look at those 135 lines. As far as I can tell, nobody has to date. And try to decide whether there's anything at that level of generality that's really privileged here. I don't think there is. I've read every one of those 135 lines. So have I. I mean, we actually, we read the whole brief, not just the redacted. Of course, Your Honor. Of course. Thank you. We'll reserve decision. Thank you so much.